UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**NEW WORLD ART CENTER, INC.**　　　　**CASE NO. 6:21-CV-00994**

**VERSUS**　　　　**JUDGE TERRY A. DOUGHTY**

**KAMAL P. SINGH, and TACI**　　　　**MAGISTRATE JUDGE WHITEHURST**
**INVESTMENTS, INC.**

**MEMORANDUM RULING**

Pending before the Court are a Motion for Partial Summary Judgment [Doc. No. 66] filed by Plaintiff New World Art Center, Inc. ("New World") and a Motion for Partial Summary Judgment [Doc. No. 67] filed by Defendants Kamal P. Singh ("Singh") and TACI Investments, Inc. ("TACI") (collectively "Defendants"). Defendants filed an opposition to New World's motion [Doc. No. 72], and New World filed an opposition to Defendants' motion [Doc. No. 73]. Each party also filed a reply [Doc. Nos. 76 & 78].

For the following reasons, New World's Motion for Partial Summary Judgment [Doc. No. 66] is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion for Partial Summary Judgment [Doc. No. 67] is **DENIED**.

**I.**　　**BACKGROUND AND PROCEDURAL HISTORY**

On April 14, 2021, New World, as lessor, filed suit in this Court for breach of contract against TACI, as lessee, and Singh, as personal guarantor for TACI. In its Complaint, New World asserts that TACI is liable to New World for breach of the parties' lease agreement for nonpayment of rent, and that Singh is liable as TACI's personal guarantor under the lease. In both their motion and opposition, Defendants admit to liability under the lease for nonpayment of rent.[1] All parties

---

[1] [Doc. Nos. 67-1; 72, p. 4].

assert that the only remaining issues concern the categories and quantum of damages recoverable by New World under the lease.

The events leading up to the suit are as follows. This suit arises out of a lease agreement for a Kentucky Fried Chicken ("KFC") fast food location in Baton Rouge, Louisiana ("the Lease").[2] The original agreement was between VRE Baton Rouge, LLC, as lessor, and Star Brands III, LLC, as lessee.[3] Subsequently, VRE Baton Rouge, LLC assigned all of its rights and obligations under the Lease to New World.[4] Then, on July 6, 2015, Star Brands III, LLC assigned all of its rights and obligations under the Lease to TACI, and Singh executed a personal guaranty of the Lease in favor of New World that same day.[5] Thereafter, TACI operated the property under the Lease as a KFC franchise from July 2015 to March 2020.[6]

On January 17, 2017, New World and TACI entered into an amendment of the Lease "to accommodate apparent business difficulties experienced by TACI."[7] The 2017 Amendment forgave rent from December 2016 to March 2017, reduced the rent from April 2017 to June 2018, and extended the Lease's term an additional six months, among other things.[8] New World alleges that TACI never resumed payment of the full rent in July 2018, as required by the amendment, nor did TACI pay the full rent at any point thereafter.[9] New World asserts that it communicated to TACI on several occasions that the rental payments were deficient.[10] Because TACI failed to

---

[2] [Doc. No. 1, ¶ 8].
[3] [Id.].
[4] [Id. at ¶ 9].
[5] [Id. at ¶ 10, 13].
[6] [Id. at ¶ 11].
[7] [Id. at ¶ 19].
[8] [Id. at ¶ 15, 19].
[9] [Id. at ¶ 20].
[10] [Id. at ¶ 21].

resume full lease payments, New World began to seek a replacement tenant or buyer for the property beginning in 2018.[11]

On March 23, 2020, TACI closed its business operations and removed its equipment from the premises.[12] At some point in June 2020, New World changed the locks to the property, and TACI asserts that it has not had access to the property as a result.[13]

The parties each filed cross-motions for partial summary judgment on September 26, 2022.[14] In New World's Motion for Partial Summary Judgment, New World argues that TACI defaulted on the Lease, and that Defendants are jointly obligated to New World for the full amount necessary to compensate them for any and all detriment caused by the breach, including future rental payments.[15] In their opposition, Defendants admit to defaulting on the Lease by nonpayment of rent, but they contest the categories and amount of damages available to New World.[16] Thus, in their own Motion for Partial Summary Judgment, Defendants lay out the exact categories and quantum of damages they believe New World is entitled to under the Lease.[17]

The key issue highlighted by both motions and their corresponding oppositions and replies is whether New World may recover accelerated future rental payments due to TACI's default, and whether the quantum of each category of damages should be left for trial. Defendants argue that New World is limited in its recovery by Paragraph 14(c) of the Lease because New World terminated TACI's right to possession of the property by changing the locks.[18] Paragraph 14(c) states, in relevant part:

---

[11] [Id. at ¶ 22].
[12] [Id. at ¶ 27, 29].
[13] [Doc. No. 67-1 at p.6].
[14] [Doc. Nos. 66 & 67].
[15] [Doc. No. 66].
[16] [Doc. No. 72].
[17] [Doc. No. 67].
[18] [Doc. No. 72 at p.3].

3

> (1) <u>Calculation.</u> If Landlord either terminates this Lease or terminates Tenant's right to possession of the Premises, Tenant shall immediately surrender and vacate the Premises and pay Landlord on demand: (a) all Rent accrued through the end of the month in which the termination becomes effective; (b) interest on all unpaid Rent from the date due at a rate equal to the lesser of twelve percent (12%) per annum or the highest interest rate permitted by Law; (c) all expenses reasonably incurred by Landlord in enforcing its rights and remedies under this Lease, including all reasonable legal expenses; (d) Costs of Reletting (defined below); and (e) all Landlord's Rental Damages (defined below). In the event that Landlord relets the Premises for an amount greater than the Rent due during the Lease Term, Tenant shall not receive a credit for any such excess.
>
> (2) <u>Definitions</u>. . . . . "Landlord's Rental Damages" shall mean the total Rent which Landlord would have received under this Lease (had Tenant made all such Lease payments as required) for the remainder of the Lease Term minus the fair rental value of the Premises for the same period, or, if the Premises are relet, the actual rental value (not to exceed the Rent due during the Lease Term), both discounted to present value at the Prime Rate (defined below) in effect upon the date of determination. For purposes hereof, the "Prime Rate" shall be the per annum interest rate publicly announced by a federally insured bank selected by Landlord in the state in which the Building is located as such bank's prime or base rate.[19]

Thus, pursuant to these provisions of the Lease, Defendants argue that New World is limited in its recovery with respect to future rent by the calculation of "Landlord's Rental Damages."[20] Under the present facts, Defendants argue, such recovery would be zero.[21]

Conversely, New World contends that Paragraphs 14(b)(7) and 14(d) control its recovery, not 14(c), because there is no factual issue that TACI abandoned the premises before New World changed the locks.[22] Thus, New World asserts it may turn to 14(b)(7) and 14(d), which it argues allow for much broader recovery.[23] Paragraph 14(b)(7) states:

---

[19] [Id.].
[20] [Id.].
[21] [Id.].
[22] [Doc. No. 73 at p.14].
[23] [Id.].

> Remedies. Upon any default, Landlord shall have the right without notice or demand (except as provided in Paragraph 14(a) above) to pursue any of its rights and remedies at Law or in equity, including any one or more of the following remedies:
>
> …
>
> Recover such other amounts set forth in Paragraph 14(c), in addition to or in lieu of the foregoing as may be permitted from time to time by applicable Law, including any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of events would be likely to result therefrom.[24]

Further, Paragraph 14(d) states:

> Tenant Not Relieved from Liabilities. Unless expressly provided in this Lease, the lawful repossession or re-entering of all or any part of the Premises shall not relieve Tenant of its liabilities and obligations under this Lease. In addition, Tenant shall not be relieved of its liabilities under this Lease, nor be entitled to any damages hereunder, based upon minor or immaterial errors in the exercise of Landlord's remedies. No right or remedy of Landlord shall be exclusive of any other right or remedy. Each right and remedy shall be cumulative and in addition to any other right and remedy now or subsequently available to Landlord at Law or in equity. If Tenant fails to pay any amount when due hereunder (after the expiration of any applicable cure period), Landlord shall be entitled to receive interest on any unpaid item of Rent from the date initially due (without regard to any applicable grace period) at a rate equal to the lesser of twelve percent (12%) per annum or the highest rate permitted by Law. In addition, if Tenant fails to pay any item or installment of Rent when due (after the expiration of any applicable cure period), Tenant shall pay Landlord an administrative fee equal to five percent (5%) of the past due Rent. However, in no event shall the charges permitted under this paragraph or elsewhere in this Lease, to the extent they are considered interest under Law, exceed the maximum lawful rate of interest.[25]

According to New World, "[t]hese provisions of Section 14, read together, mean that the Plaintiffs are not limited to the calculation of damages set forth in Paragraph 14(c)."[26] Thus, New World

---

[24] [Doc. No. 66-3 at p.8].
[25] [Id. at p.9–10].
[26] [Id. at p.10].

5

contends it may prove future rent as a category of damages at trial.[27] In response, Defendants assert that, regardless, Paragraphs 14(b)(7) and 14(d) do not contain an acceleration clause, which is a prerequisite to collecting accelerated future rent under Louisiana law.[28]

The parties further dispute whether certain categories of damages can be established at the summary judgment stage, or whether a genuine issue of fact exists requiring trial on the issue of quantum. Specifically, New World argues that factual issues exist concerning both fair market value and fair rental value.[29] In contrast, Defendants assert that New World's expert has already established fair market and rental values, and thus, the issue is appropriate for summary judgment.[30]

The issues are briefed, and the Court is prepared to issue a ruling.

## II.  LAW AND ANALYSIS

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v.*

---

[27] [Id.].
[28] [Doc. No. 76 at p.7].
[29] [Doc. No. 73 at p.6, 8].
[30] [Doc. No. 76 at p.2].

6

*Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted).; *see also* Fed. R. Civ. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *See Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

### B. Analysis

As noted above, the issue of liability is undisputed because Defendants admitted to defaulting on the Lease for nonpayment of rent. Thus, summary judgment is **GRANTED** in favor of New World as to Defendants' liability under the Lease. The remaining issues concerning damages will be addressed below.

#### 1. Recovery of accelerated future rent

Both parties argue that New World's recovery of accelerated future rent depends on this Court's interpretation of the Lease and specifically, Paragraph 14. The parties further agree that Louisiana law governs interpretation of the Lease.

7

The Louisiana Civil Code establishes that the "[i]nterpretation of a contract is the determination of the common intent of the parties." La. C.C. Art. 2045. When interpreting a contract under Louisiana law, a court must look to the four corners of the contract. *See John Paul Sapir, LLC v. Yum! Brands, Inc.*, 106 So.3d 646, 652 (La. App. 4 Cir. 12/5/12). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. Art. 2046. The determination of whether a contract is ambiguous is a question of law. *See id.* When a contract can be interpreted from its four corners, the question of contractual interpretation is answered as a matter of law, and thus, summary judgment is appropriate. *See Brown v. Drillers, Inc.*, 630 So.2d 741, 749–50 (La. 1994).

"Each provision of a contract must be interpreted in light of the other provisions, and a provision susceptible of different meanings must be interpreted with a meaning that renders it effective rather than one which renders it ineffective." *Lewis v. Hamilton*, 652 So.2d 1327, 1330 (La. 4/10/95) (citing LA. CIV. CODE arts. 2049–2050). "When interpreting contracts, specific provisions govern general provisions." *KP Auto Sales, Inc. v. ADG, LLC*, 185 So.3d 308, 313 (La. App. 3 Cir. 02/10/16). "Furthermore, a contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Off. of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000).

Here, the terms of the Lease are unambiguous. By its own terms, Paragraph 14(c) applies "[i]f Landlord either terminates this Lease or terminates Tenant's right to possession of the Premises."[31] Clearly, then, if New World, as Landlord, terminated the Lease or terminated TACI's right to possession, Paragraph 14(c) applies, and New World would be limited by the terms of

---

[31] [Doc. No. 72 at p.3].

Paragraph 14(c). If New World were not so limited, that provision would be rendered meaningless. In other words, if the Landlord could recover any amounts under Paragraph 14(b)(7) and (d) in addition to its recovery under (c), the inclusion of the specific limitations contained in 14(c) in the Lease would be superfluous. *See Lewis*, 652 So.2d at 1330 (holding courts must interpret contract provisions to render them effective, rather than ineffective); *Preston v. S. Univ. Through Bd. of Supervisors of S. Univ. Agric. & Mech. Coll.*, 328 So.3d 1194, 1200 (La. App. 1 Cir. 7/13/21), *writ not considered*, 327 So.3d 510 (La. 11/17/21) (interpreting contract to give "effect to all of the contract's provisions, rendering no terms superfluous"); *Pattridge v. Starks*, 181 So.3d 192, 197 (La. App. 2 Cir. 11/18/15), *writ denied sub nom. Pattirdge v. Starks*, 187 So.3d 463 (La. 2/19/16) (affirming trial court's reading of the contract to avoid rendering term superfluous, which would be "contrary to the aim of the Civil Code").

New World argues that the various subparts of Paragraph 14 are "cumulative," and thus, New World can recover any and all damages necessary to compensate it for any detriment caused by TACI's breach. Again, such a reading would render 14(c) meaningless if the Lease were interpreted such that the other subparts of Paragraph 14 allowed any recovery the Landlord wants, regardless of the facts. Thus, if New World terminated the Lease or TACI's right to possession, Paragraph 14(c) controls New World's recovery and limits that recovery such that accelerated future rental payments are reduced by Landlord's Rental Damages, as defined in the Lease.

Defendants argue that Paragraph 14(c) controls New World's recovery because New World terminated TACI's right to possession of the premises.[32] Specifically, Defendants assert that, by changing the locks to the premises, New World terminated TACI's right to access the property, and thus effectively limited its own recovery under the Lease.[33] New World responds that, before

---

[32] [Id. at p.9].
[33] [Id.].

9

it changed the locks, TACI unjustifiably abandoned the premises, thus entitling New World to enter the property for purposes of reletting the premises.[34]

Typically, upon breach of a lease, the lessor is limited to two recovery options: "he may sue to *cancel* the lease and to recover accrued rentals due, or he may sue to *enforce* the lease and to recover both accrued rentals and future accelerated rentals (if the lease contains an acceleration clause)." *Richard v. Broussard*, 495 So. 2d 1291, 1293 (La. 1986) (emphasis in original). These remedies are "mutually exclusive," and "any attempt by a lease document to circumvent established law is unenforceable." *Kushi Healthcare, L.L.C. v. St. James Behav. Health Hosp., Inc.*, 174 So.3d 1192, 1197 (La. App. 1 Cir. 6/5/15). Under this rule, a lessor typically cannot both recover possession of the premises and seek future accelerated rentals. *See id.* Notably, a lessor's decision to change the locks of leased property is typically considered re-taking possession and terminating the lessee's rights under Louisiana law. *See, for e.g.*, *Ziegler v. Gros*, 269 So.2d 587, 588 (La. Ct. App. 1972).

Despite this general rule, some Louisiana courts allow lessors to both re-take possession of the leased premises and recover accelerated future rent, depending on the facts. For example, in *Richard v. Broussard*, the Supreme Court of Louisiana held that "when the lessee breaches the lease by abandoning the premises, the lessor has the right to take possession of the premises as agent for the lessee and to relet the premises to a third party without canceling the lease or relieving the lessee of his obligations." *See* 495 So.2d at 1293. Thus, where a lessee has abandoned the leased premises, a lessor may re-take possession for limited purposes, without forfeiting its recovery under the lease. *See id.*; *see also 745 Olive St., L.L.C. v. Optimal Wellness, LLC*, No. 54,778-CA, 2022 WL 16954531, at *3, 4 (La. App. 2 Cir. 11/16/22) (holding lessee "abandoned

---

[34] [Doc. No. 78 at p.2].

the property and *excluded themselves* by surrendering the keys and never attempting or expressing a desire to occupy the property thereafter," thus allowing lessor to re-take the premises and still claim accelerated future rental payments) (emphasis in original). Thus, if TACI abandoned the premises, then New World likely did not terminate TACI's right to possession and may be entitled to recover accelerated future rent. However, if TACI did not abandon the premises, then New World likely did terminate TACI's right to possession by changing the locks, and Paragraph 14(c) is implicated, thus precluding New World from recovering accelerated future rent.

"In determining whether abandonment has occurred, there must be a showing that the lessee voluntarily relinquished the premises and intended to terminate without vesting ownership in another." *Bill Kassel Farms, Inc. v. Paul*, 690 So.2d 807, 809 (La. App. 3 Cir. 12/11/96), *writ denied*, 692 So.2d 1095 (La. 4/25/97). "[T]he abandonment of property by a tenant to such an extent as to vest title and control in the landlord involves both an act of abandonment and a specific intent to abandon." *Powell v. Cox*, 92 So.2d 739, 742 (La. Ct. App. 1957). "It has been held that the characteristic element of abandonment is voluntary relinquishment." *Id.* "Therefore, the intention of the owner is a material factor for consideration." *Id.*

Upon review of the summary judgment evidence, the Court finds that a genuine issue of material fact exists concerning whether—and if so, when—TACI may have abandoned the premises. New World points to several facts to assert that no fact issue exists: (1) Defendants closed the restaurant on March 23, 2020; (2) Defendants "de-identified the property as a KFC, taking down all KFC branding and signage"; (3) Defendant "removed items and pulled out equipment"; and (4) Defendants "made no attempts to re-open the restaurant after March 23, 2020."[35] However, after Defendants took these steps, New World entered the premises and

---

[35] [Doc. No. 73 at p.12].

11

changed the locks sometime in June 2020, approximately three months later, and Defendants have not had access to the property since.[36] A few months of closure, during a global pandemic, does not definitively establish Defendants' intention to forfeit all rights to the property under the Lease. And notably, Defendants do not concede that they abandoned the premises.[37] Thus, Defendants have directly contested the intent element of abandonment. *See Powell*, 92 So.2d at 742. Thus, this Court finds that a genuine issue of material fact exists concerning TACI's alleged abandonment of the premises. Because such a finding determines whether New World's decision to change the locks can be considered termination of TACI's right of possession, and thus whether Paragraph 14(c) applies, summary judgment is inappropriate at this time.

New World asserts that it did not terminate TACI's possession, and thus, Paragraphs 14(b)(7) and (d) control New World's remedies.[38] However, the Court finds that New World cannot collect accelerated future rent under these provisions of the Lease alone. If Paragraph 14(b)(7) and (d) applied here—where the Landlord did not terminate the Tenant's right to possession or terminate the Lease itself—accelerated future rents would not be recoverable under the contract's language. Louisiana law typically requires an acceleration clause to seek future rental payments. *See, for e.g.*, *Weddington Co., LLC v. Offshore Inland Marine & Oilfield Serv., Inc.*, No. CIV.A. 11-681, 2012 WL 243197, at *5 (W.D. La. Jan. 25, 2012) ("However, in order to recover future accelerated rentals, the lease agreement must contain an acceleration clause."); *Kushi Healthcare, L.L.C.*, 174 So.3d at 1197 (holding lessor may enforce the lease and recover accelerated future rent "if the lease contains an acceleration clause").

---

[36] [Doc. No. 76 at p.6].
[37] [Id. at p.3, n.2].
[38] [Doc. No. 73 at p.3].

Notably, Paragraphs 14(b)(7) and (d) are devoid of any language regarding future rent. The only language that demonstrates an ability to recover future rents is in 14(c), which specifically mentions such damages. It seems inapposite that Louisiana courts would specifically require an acceleration clause to recover this category of damages, and then allow a generic clause such as that in Paragraph 14(b)(7) to constitute an acceleration clause. *See Richard*, 495 So.2d at 1293 (holding that a lessor may sue to enforce a lease and collect accelerated future rentals "(if the lease contains an acceleration clause)"). Thus, if New World is found not to have terminated TACI's right to possession, and Paragraphs 4(b)(7) and (d) control, New World cannot recover accelerated future rent, under the clear language of the Lease.

The Court notes that there is case law in Louisiana stating that, even without an acceleration clause, a lessor can seek accelerated future rent where the lessee abandoned the premises. For example, in *Salim v. Louisiana State Board of Education*, the Third Circuit Court of Appeals in Louisiana noted that other Louisiana courts have held "when a tenant abandons the leased premises before the expiration of the lease, he is bound for rent for the whole term." 289 So.2d 554, 560 (La. Ct. App.), *writ denied sub nom. Salim v. Louisiana State Bd. of Educ.*, 293 So.2d 177 (La. 1974). The court thus focused on the issue of abandonment as justification for recovery of future rent, even though the lease contract did not contain an acceleration clause. *See id.* As noted above, a fact issue exists as to whether TACI abandoned the premises here. Thus, resolution of this fact issue may alter New World's ability to collect future rent, despite Paragraph 14(b)(7) and (d) of the Lease. Thus, for all of the above reasons, summary judgment is **DENIED** as to whether New World can recover accelerated future rental payments because a fact issue exists as to TACI's abandonment of the premises.

**2. Quantum of damages**

Defendants assert that certain categories of damages can be established at the summary judgment stage, while New World argues that each category of damages requires proof at trial. The Court finds that factual disputes exist concerning both fair market value and fair rental value, especially concerning this Court's recent Order allowing New World to supplement its expert reports.[39] Because conflicting evidence exists as to the amount of these damages, summary judgment is inappropriate. Thus, summary judgment is **DENIED** as to the quantum of damages because factual disputes exist concerning the amount of damages to which New World is entitled. Such issues are reserved for trial.

### III. CONCLUSION

For the reasons set forth herein, **IT IS ORDERED, ADJUDGED, AND DECREED** that New World's Motion for Partial Summary Judgment [Doc. No. 66] is hereby **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to Defendants' liability under the Lease. The Motion is **DENIED** as to whether New World may cover accelerated future rental payments.

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment [Doc. No. 67] is hereby **DENIED**.

MONROE, LOUISIANA, this 20th day of December, 2022.



Terry A. Doughty
United States District Judge

---

[39] [Doc. No. 79].